# Third District Court of Appeal

## State of Florida

Opinion filed April 24, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-519
Lower Tribunal No. 17-9607
_____

**Megacenter US LLC, etc.,**
Appellant,

vs.

**Goodman Doral 88th Court LLC, etc.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, John W. Thornton, Jr. and Jacqueline Hogan Scola, Judges.

Duane Morris, LLP, Alvin D. Lodish and Richard D. Shane, for appellant.

Weiss Serota Helfman Cole & Bierman, P.L. and Edward G. Guedes and Eric P. Hockman, for appellee.

Before EMAS, C.J., and SALTER, and FERNANDEZ, JJ.

PER CURIAM.

Megacenter US, LLC., ("Megacenter") appeals the trial court's order on Megacenter's motion for rehearing as to the trial court's corrected summary final

judgment dated January 3, 2018, and corrected summary final judgment. On the issue of notice, we find that Florida law supports Megacenter's position that it substantially complied with the notice requirement in the subject Purchase and Sale Agreement. We find further that the purchase and sale agreement at issue in this case provided for automatic termination on the record presented. We thus reverse and remand for entry of summary judgment in Megacenter's favor.

On January 26, 2017, Goodman Doral 88th Court, LLC., ("Goodman"), the seller, entered into a contract with Megacenter, the purchaser, for the purchase of real property located in the City of Doral, Florida ("City"). Megacenter made a $250,000.00 initial deposit, as required by the parties' purchase and sale agreement ("Agreement"). The purchase price for the property was $10,500,000.00. Megacenter delivered the initial deposit to an escrow agent, as required by paragraph 3 of the Agreement.

Megacenter's intention was to use the property for a self-storage facility, so it notified Goodman of its intent. Megacenter let Goodman know that if the property could not be used as a self-storage facility, it would not purchase the property. When the parties entered into the Agreement, the parties did not know if the City's zoning allowed the property to be used as a self-storage facility. On March 10, 2017, Megacenter requested that the City issue Megacenter a zoning

verification letter letting Megacenter know if the subject property could be used for this purpose.

In the Agreement between Goodman and Megacenter, the parties negotiated the provisions by which Megacenter could terminate the Agreement and recover its deposit. Paragraph 3 of the Agreement stated:

> 3. **Deposit**. To secure the performance of Purchaser's obligations under this Agreement, within two (2) Business Days after the Effective Date of this Agreement, Purchaser shall deliver by wire transfer to Chicago Title Insurance Company, as escrow agent ("**Escrow Agent**"), an initial deposit ("**Initial Deposit**") in the amount of TWO HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($250,000.00), the proceeds of which shall be held in trust as an earnest money deposit by Escrow Agent, and disbursed only in accordance with the terms of this Agreement. On or before the expiration of the Inspection Period, if Purchaser does not terminate (or is not deemed to have terminated) this Agreement pursuant to the provisions hereof, Purchaser shall deliver to Escrow Agent, an additional deposit ("**Additional Deposit**") in the amount of SEVEN HUNDRED FIFTY THOUSAND and 00/100 DOLLARS ($750,000.00).… In the event that Purchaser does not deliver the Additional Deposit to Escrow Agent on or before the expiration of the Inspection Period, the same shall be deemed a termination of this Agreement within the Inspection Period and the Agreement shall be terminated, whereupon all parties shall be released from all further obligations under this Agreement, except for obligations that expressly survive termination of this Agreement. The Initial Deposit and the Additional Deposit (as, if and when made) shall collectively be referred to herein as the "**Deposit**". … Seller and Purchaser have entered into a separate escrow agreement with Escrow Agent with respect to the Deposit.

(emphasis in original). Thus, the Agreement would terminate automatically if Megacenter did not provide the $750,000.00 Additional Deposit on or before the end of the "Inspection Period" as defined within the Agreement.

Paragraph 7 of the Agreement, which governs Megacenter's right to inspect the property, stated:

> 7. **Inspection Period/AS IS Purchase**. Purchaser shall have until 5:00 p.m. on the forty-fifth (45th) day following the Effective Date (the "Inspection Period") to make such physical, structural, legal, zoning, title, survey, land use, environmental, topographical and other examinations, inspections and investigations of the Property which Purchaser, in Purchaser's sole discretion has determined to make. In the event Purchaser is not satisfied with the Property, in Purchaser's sole discretion, Purchaser may cancel this transaction by written notice of cancellation given to both Seller and the Escrow Agent prior to the expiration of the Inspection Period, in which event, the Escrow Agent shall return the Deposit and all interest earned thereon to Purchaser, whereupon both parties shall be released from all further obligations under this Agreement except those that expressly survive. In the event Purchaser has not so timely delivered written notice of cancellation, then the foregoing condition precedent shall automatically be deemed to be satisfied in full and Purchaser's right of termination shall be deemed waived. … In electing to enter into this Agreement, Purchaser shall purchase the Property in its "AS IS" condition and situation as of the Effective Date, including the physical, legal, and environmental condition and status of the Property. Purchaser expressly agrees that the Property will be conveyed by Seller without any representations, warranties or guarantees of any nature whatsoever, express or implied, except to the extent of any representations expressly set forth herein or in any document delivered by Seller in connection with the Closing. … The provisions of this paragraph shall survive Closing and the early termination of this Agreement.

Accordingly, this provision allowed Megacenter to terminate the Agreement, at Megacenter's sole discretion, if it was not satisfied with the subject property, by providing written notice of cancellation to Goodman by the end of the inspection period.

Paragraph 17 of the Agreement addressed "Notices" and stated:

17. **Notices**. Any notices required or permitted to be given under this Agreement shall be in writing and shall be deemed to have been given if delivered (i) by registered or certified mail, return receipt requested, postage prepaid, (ii) by hand delivery, (iii) by recognized overnight courier (such as Federal Express), or (iv) by facsimile with confirmed receipt, and addressed as follows: …"

The Agreement stated that notices to the seller must be sent to Goodman's physical address with a copy to its counsel. Paragraph 17 further noted:

Notice shall be deemed given when delivered or upon refusal to accept delivery, and may be given on behalf of any party by its respective counsel. A copy of any written notice sent by either party to the other shall also be sent to all parties above via electronic mail at the addresses set forth above simultaneously with the sending of such notice via the delivery methods described above.

Under the Agreement, the "Inspection Period" expired at 5:00 p.m. on March 13, 2017. On Friday, March 10, 2017, the last business day before the expiration of the inspection period, Megacenter still did not know if the City would permit the property to be used as a self-storage facility. Megacenter thus requested an extension of the inspection deadline. Consequently, Megacenter and Goodman executed the "First Modification to Purchase and Sale Agreement." This First

5

Modification extended the Inspection Period by four extra days, so the deadline was now March 17, 2017 at 5:00 p.m., allowing Megacenter the additional time to obtain the zoning letter from the City. The First Modification stated:

> Seller has agreed to extend the Inspection Period until 5:00 PM on March 17, 2017 to permit Purchaser the opportunity to obtain the Zoning Letter" . [sic] If Purchaser is unable to obtain a Zoning Letter that is reasonably satisfactory to Purchaser and provides evidence of such rejection to Seller, Purchaser shall have the right to terminate the Agreement during the Inspection Period pursuant to the provisions of Section 7 of the Original Agreement.

The First Modification further stated: "Purchaser has requested an extension to the Inspection Period for the sole purpose of obtaining Zoning Letter[.]" The First Modification also outlined that "[i]n the event of inconsistency between the provisions of this Modification and the provisions of the Original Agreement, the terms of this Modification shall govern and control." The First Modification provided: "Except as hereby modified, all of the provisions of the Original Agreement are hereby ratified and confirmed and shall be and remain in full force and effect, and the same are enforceable in accordance with their terms."

It is undisputed that on March 17, 2017, at 4:23p.m., Megacenter representative Pablo Wichman emailed Goodman's counsel, Joseph Hernandez, Esq., advising Goodman that Megacenter had not received the zoning letter from the City. The email further notified Goodman that if Megacenter did not receive a signed second modification to the Agreement by 5:00 p.m. that day, then

6

Megacenter would terminate the Agreement. The email contained an attachment, a proposed "Second Modification to Purchase and Sale Agreement" to extend the deadline to March 22, 2017. Mr. Wichman stated in the email: "I apologize for the short notice, but if we have not received a response by 5 PM we will terminate the contract with the firm intention to reinstate once we receive the letter." Neither Goodman nor his counsel responded to Megacenter's email before the deadline. At 5:00 p.m., Megacenter emailed Goodman with formal notice of termination. At 5:07 p.m., Goodman's counsel responded to Mr. Wichman, acknowledging receipt of Mr. Wichman's notice of termination and indicating he would review the correspondence and discuss it with Goodman. Megacenter did not make the "Additional Deposit" of $750,000.00 before the end of the Inspection Period (as extended by the First Modification).

Thereafter, also on March 17, 2017, at 6:55pm, Goodman's representative, Alan Cockburn, responded to Megacenter's request for a second extension of the deadline by stating: "Please would you send us a copy of your request for a zoning verification. We will then be happy to extend until 22 April. Roger and Joe, please advise whether we can do so by signing the second modification or if a reinstatement agreement is required."

On March 20, 2017, Megacenter received the City's response confirming that the property in question was suitable as a self-storage facility. Thus,

Megacenter did not learn if the subject property was suitable for its desired use until after the Agreement was terminated. Megacenter demanded the return of its $250,000.00 initial deposit, which Goodman refused. Megacenter then filed a one-count complaint for breach of contract for the return of its deposit. Goodman responded with an Answer, one affirmative defense, and a counterclaim asserting a claim for declaratory judgment and a claim for breach of contract.

Both sides moved for summary judgment, claiming there were no disputed issues of material fact. Megacenter argued that it was entitled to summary judgment because it timely and properly terminated the Agreement, and in addition, it terminated the Agreement by non-payment of the $750,000.00 Additional Deposit. Goodman's cross-motion for summary judgment alleged that under the First Modification, Megacenter could only terminate the Agreement by providing the notice required by paragraph 7. Goodman alleged that Megacenter failed to provide that notice.

At the hearing on the parties' motions for summary judgment, the trial court denied Megacenter's motion for summary judgment on its breach of contract claim and granted Goodman's motion for summary judgment on its counterclaims for declaratory judgment and breach of contract. In its written summary judgment order, the trial court held that:

> "[U]nder the plain language of the First Modification Agreement, Megacenter could terminate the Purchase Agreement prior to the

8

expiration of the Inspection Period only by providing prior written [sic] in specified forms and to all individuals named, pursuant to Section 7 of the Original Agreement, that included evidence that the City of Doral rejected Megacenter's request for a Zoning Letter."

The trial court further found that Megacenter did not "deliver ... timely written notice of cancellation of the Purchase Agreement that included evidence of the City's rejection of Megacenter's request for a Zoning Letter and was NOT sent to the proper parties in the proper forms." The trial court held that Megacenter "waived its right of termination and is in default under the Purchase Agreement without default by Goodman." The trial court ordered that Goodman was entitled to $1,000,000.00 (the $250,000.00 initial deposit Megacenter had already paid and the additional $750,000.00 deposit Megacenter had not yet paid), together with pre- and post-judgment interest. Megacenter moved for rehearing, which the trial court denied without a hearing. This appeal followed.

On appeal, we address Megacenter's contentions that (1) it properly terminated the Agreement by timely written notice, and (2) the Agreement and First Modification automatically terminated as a result of Megacenter's non-payment of the $750,000.00 Additional Deposit before the end of the Inspection Period.

Termination Notice

We agree with Megacenter that even if we accepted Goodman's position that Megacenter could only terminate the Agreement by written notice, Megacenter's

9

substantial compliance with the notice provision was sufficient to terminate the Agreement. The record reflects that Megacenter provided actual notice via email to Goodman of its decision to terminate the Agreement, which Goodman received. Megacenter's notice of termination was sufficient under Florida law and, accordingly, the Agreement was terminated. Thus, Megacenter's motion for summary judgment should have been granted, as it is entitled to the return of its Initial Deposit ($250,000.00) and should not be required to pay the Additional Deposit ($750,000.00).

We review an order granting summary judgment under a *de novo* standard of review. Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000). Questions of law, such as contract interpretation issues, are also reviewed *de novo*. Siegel v. Tower Hill Signature Ins. Co., 225 So. 3d 974, 976 (Fla. 3d DCA 2017).

Megacenter contends that under Florida law, it gave timely actual notice to Goodman that it was terminating the Agreement, that Goodman received the notice, and that Megacenter thus substantially complied with the terms of the First Modification. The record is clear that Goodman's counsel received Megacenter's timely email written notice of termination. There is no dispute on this issue with regard to receipt of the email. Furthermore, Goodman does not dispute that, under Florida law, the sufficiency of legal notice is measured by the substantial

10

compliance standard. Lafaille v. Nationstar Mortg., LLC, 197 So. 3d 1246, 1247 (Fla. 3d DCA 2016). However, Goodman argues that the notice is technically deficient under Paragraph 17 of the Agreement, which outlined the methods under which notice was to be provided to Goodman. We disagree with Goodman, as the record reflects that Megacenter properly terminated the Agreement.

Under Florida law, strict compliance with a notice provision is not required if one of the parties (in this case, Goodman) has actual notice, as Megacenter contends. Megacenter cites to Patry v. Capps, 633 So. 2d 9, 10-11 (Fla. 1994) in support of its position. The rule set out in Patry requires only substantial and not strict compliance, where notice is required under contracts and statutes. Florida and federal courts follow this rule. Tim Hortons USA, Inc. v. Singh, 2017 WL 1326285 *8 (S.D. Fla. Apr. 5, 2017); Lafaille, 197 So. 3d at 1247; Diaz v. Wells Fargo Bank, N.A., 189 So. 3d 279, 282 (Fla. 5th DCA 2016); In re Forfeiture of 2003 Chevrolet Corvette, Identification No. 1G1YY12S435100084, Tag VBA386, 932 So. 2d 623, 625 (Fla. 2d DCA 2006); Woolf v. Woolf, 901 So. 2d 905, 911 (Fla. 4th DCA 2005); Angrand v. Fox, 552 So. 2d 1113, 1114 n.4 (Fla. 3d DCA 1989).

As Megacenter argues, the purpose of delivering notice by the methods outlined in the Agreement is so that a party cannot claim it never received notice, while the other party alleges it gave notice. Phoenix Ins. Co. v. McCormick, 542

11

So. 2d 1030, 1032 (Fla. 2d DCA 1989). However, such is not the case here, where Goodman accepted Megacenter's written notice and Goodman had actual notice of Megacenter's termination. See Torres v. K-Site 500 Assocs., 632 So. 2d 110, 112 (Fla. 3d DCA 1994). There is sufficient evidence in the record to support entry of summary judgment in Megacenter's favor and against Goodman because there are no genuine issues of material fact as to whether Megacenter properly terminated the Agreement and is entitled to the return of its Initial Deposit.

Termination Upon Failure to Make the Additional Deposit

For the sake of completeness, we also determine that Megacenter's second and independently-sufficient argument is well taken. The First Modification amended a defined term, "Inspection Period," by extending that date to March 17, 2017. Whether through inadvertence or intention, the parties did not specify whether the $750,000.00 Additional Deposit required by Paragraph 3 was to be due on the original Inspection Period expiration date or on the Inspection Period as extended by the parties in their First Modification. Goodman apparently argues that "Inspection Period," a defined term, meant one date for the zoning letter contingency, but something else vis-à-vis the Additional Deposit.[1]

---

[1] With the zoning letter contingency still open and Goodman having declined to extend the Inspection Period again before expiration of the extended deadline, Megacenter's non-payment of a further $750,000.00 is entirely consistent with its declaration that the contract was terminated when that deadline came and went.

12

The Agreement and the First Modification use a single term, "Inspection Period." The extension of that defined temporal period also modified the time for making the Additional Deposit. The automatic termination provision of Paragraph 3 of the Agreement used that term as the deadline for the Additional Deposit.

The pertinent provision of Paragraph 3 of the Agreement relating to the Additional Deposit is: "In the event that Purchaser does not deliver the Additional Deposit to Escrow Agent on or before the expiration of the Inspection Period, **the same shall be deemed a termination of this Agreement within the Inspection Period and the Agreement shall be terminated, whereupon all parties shall be released from all further obligations under this Agreement**, except for obligations that expressly survive termination of this Agreement" (emphasis provided). It is undisputed that Megacenter did not deliver the Additional Deposit to the Escrow Agent on or before the expiration of the Inspection Period. That objectively-ascertainable fact is "deemed" a termination of the Agreement and is an independent basis for our reversal.

<u>Conclusion</u>

We thus reverse the trial court's order granting summary judgment in favor of Goodman on both counts of its counterclaim and denying Megacenter's summary judgment motion on its one-count complaint. The case is remanded to

13

the trial court for entry of final summary judgment in Megacenter's favor on its breach of contract claim and return of its initial $250,000.00 deposit.

Reversed and remanded with instruction.